The Indiana Bicycle Company v. Willis.

---

THE INDIANA BICYCLE COMPANY v. WILLIS.

[No. 2,273.    Filed December 7, 1897.]

MALICIOUS PROSECUTION.—*Corporation.—Complaint.*—In an action against a corporation for malicious prosecution, it is not necessary that the complaint set out the name and authority of the agent or employe through whom the prosecution was instituted.    p. 528.

SAME.—*Preliminary Trial.—Discharge.—Special Verdict.*—A special verdict in an action for malicious prosecution which finds that the defendant caused the arrest of the plaintiff on a charge of grand larceny, and that after three days' imprisonment plaintiff had a preliminary hearing before the judge of the police court, and was discharged, and that the prosecution then terminated, sufficiently finds that the prosecution was ended, and plaintiff discharged from custody.    p. 529.

The Indiana Bicycle Company *v.* Willis.

SAME.—*Probable Cause a Question of Law.*—Where a special verdict is returned in an action for malicious prosecution, the question of probable cause for the prosecution complained of is not a fact to be found by the jury, but a question of law to be determined by the court.  *pp. 533, 534.*

SAME.—*Malice a Question of Fact.*—In the trial of an action for malicious prosecution it is within the province of the jury to find whether or not the prosecution was malicious.  *p. 535.*

SAME.—*Special Verdict.*—When in an action against a corporation for malicious prosecution, a special verdict is returned, and the facts found leading up to the arrest and prosecution, it is proper for the jury to find, as an ultimate inference of fact, that the representative of the corporation in causing the arrest and prosecution did not act as a reasonably prudent man would act under like circumstances.  *p. 534.*

SAME.—*Probable Cause.*—*Special Verdict.*—The special verdict in an action for malicious prosecution showed that the plaintiff, who had been employed as an instructor in bicycle riding, had been discharged, but was permitted to remain about the premises.  During his employment plaintiff was in the habit of riding one of defendant's wheels to and from his meals, and he continued so to do after his discharge, and did so on this occasion. Defendant's agent, after learning that the bicycle had been taken, made no inquiry except to learn where plaintiff had gone, and sent another employe with an officer and caused plaintiff's arrest and prosecution.  *Held,* that the verdict showed a want of probable cause.  *pp, 530–535.*

SAME.—*Special Verdict.*—*Innocence of Plaintiff Need Not Be Found.*—Where, in an action for malicious prosecution, a special verdict is returned, it is not necessary, in order to justify a judgment for plaintiff, that the verdict should find that plaintiff was innocent of the crime for which he was prosecuted.  *pp. 535, 536.*

APPEAL AND ERROR.—*Bill of Exceptions.*—*Longhand Manuscript of Evidence.*—The record must affirmatively show that the longhand manuscript of the evidence was filed in the clerk's office before it was incorporated in the bill of exceptions.  *p. 537.*

From the Marion Circuit Court.  *Affirmed.*

*F. T. Hord* and *L. Perkins,* for appellant.

*A. P. Hines, J. B. Kealing, M. M. Hugg* and *Jameson & Joss,* for appellee.

ROBINSON, C. J.—Appellee recovered a judgment against appellant for an alleged malicious prosecution.

The first error discussed is the overruling of the appellant's motion to make the complaint more specific.

The complaint avers, in substance, that on the 19th day of March, 1895, appellant falsely and maliciously, and without any reasonable or probable cause therefor, caused the appellee to be arrested upon the charge of grand larceny, in that he unlawfully and feloniously stole one bicycle of the value of fifty dollars, the property of the appellant and falsely and maliciously caused him to be imprisoned in the station house and county jail for the space of three days and four nights; that on the 20th day of March, 1895, appellant falsely and maliciously and without any reasonable or probable cause therefor caused appellee to be charged before a police judge with grand larceny in unlawfully and feloniously stealing a bicycle, the property of appellant, and thereupon caused such police judge to issue a warrant in due form of law for the arrest of appellee, and thereby falsely, maliciously, and without any reasonable or probable cause therefor, caused appellee to be arrested, detained, and imprisoned against his will upon said charge in the county jail for three days and three nights; that upon the trial of said cause before said police judge on the 23d day of March, 1895, appellee was acquitted and discharged of said crime, and said prosecution is now ended and wholly determined; that by reason of the facts aforesaid appellee was wrongfully and maliciously, and without any reasonable or probable cause therefor, deprived of his liberty, and confined in prison as a common malefactor, and suffered great mental distress and anxiety, and was brought into public infamy and disgrace; that he suffered great loss of time and was greatly and specially damaged in his business and occupation by reason of the necessary damage to his reputation and good name.

It is argued by appellant's counsel that as the complaint is against a company and not against an individual, and therefore imports upon its face that appellant was a corporation, it could act only through an agent or employe, and that the complaint should give the name of such agent or employe, the scope of his authority and in what capacity he was acting at the time.

It is well settled that an action for malicious prosecution may be maintained against a corporation, and that where a corporation entrusts a general duty to an agent it is liable in damages to one who suffers from the wrongful act of the agent, done in the course of his general authority, although in doing the particular act the agent may have disobeyed instructions. *Evansville, etc., R. W. Co.* v. *McKee*, 99 Ind. 519, and cases there cited.

A corporation can act only through an officer or agent, and when a corporation is charged with having done an act, such allegation will be held to mean that the act was done by an officer or agent. Appellant knew what officers and agents it had, and the extent of the authority of each, and the rule has long been established that a plaintiff is not bound to plead facts which are peculiarly within the knowledge of the defendant. *Louisville, etc., R. R. Co.* v. *Crunk,* 119 Ind. 542.

It is provided by the code that in the construction of a pleading its allegations shall be liberally construed with a view to substantial justice between the parties, and when the allegations are so indefinite or uncertain that the precise nature of the charge is not apparent the court may require the pleading to be made more definite and certain. Section 379, Burns' R. S. 1894 (376, Horner's R. S. 1896). We think the complaint sufficiently definite and certain, and that the

motion to make it more specific was properly overruled.

The refusal of the court to render judgment for appellant on the special verdict is assigned as error. It is first insisted that the verdict fails to show that appellee was acquitted or discharged from the prosecution complained of, or that the same was terminated. But the verdict on this subject is that appellee was arrested by an officer by direction of Staley, who was acting for appellant, that the arrest was made at the request of Staley; that Staley caused appellee to be arrested on the charge of grand larceny, stealing a bicycle belonging to appellant; that he was taken to the police station and imprisoned until the following morning, when Staley procured an affidavit to be filed before the judge of the police court in the city of Indianapolis, charging him with the larceny of said bicycle; that a warrant was issued on said affidavit and served; that three days thereafter appellee had a preliminary hearing before the judge of said police court; that after such preliminary hearing appellee was discharged, and that said prosecution then terminated; that appellee was incarcerated in the county jail under said warrant.

We think the verdict on this question is capable of but one interpretation, and that is that the prosecution of which appellee complains was ended and appellee discharged from custody.

To entitle appellee to a recovery it must appear from the special verdict that he was charged with the crime of grand larceny; that he was arrested, tried, and acquitted upon said charge; that appellant, through some one representing it, caused appellee's arrest, and voluntarily aided or abetted in the prosecution; that such prosecution was malicious, and that

it was without probable cause. *Evansville, etc., R. R. Co.* v. *Talbot*, 131 Ind. 221. See *Paddock* v. *Watts*, 116 Ind. 146; *Uppinghouse* v. *Mundel*, 103 Ind. 238; *Strickler* v. *Greer*, 95 Ind. 596; *Seeger* v. *Pfeifer*, 35 Ind. 13; *Workman* v. *Shelly*, 79 Ind. 442; *Richter* v. *Koster*, 45 Ind. 440; *Schoonover* v. *Reed*, 66 Ind. 598; *Louisville, etc., R. W. Co.* v. *Hendricks*, 13 Ind. App. 10.

The verdict shows that Staley, who caused the arrest and prosecution, was at the time the representative and agent of appellant; that appellee was employed by appellant about March 1, 1895, as an instructor in bicycle riding, and about a week prior to March 19, was discharged; that after his discharge, Staley agreed to refer the matter to the president of appellant upon his return home; that Staley forbid appellee to stay at the riding school, but awaiting the president's return offered to allow appellee to work in appellant's repair shop, but this offer was refused, and appellee remained at the riding school with Staley's knowledge; that during appellee's employment he was in the habit of riding appellant's wheels to and from meals, with Staley's knowledge, and that he continued to so ride appellant's wheels after his discharge, with Staley's knowledge. On March 19, Patterson, an employe of appellant, promised appellee the use of his wheel to ride to supper. Upon Patterson's return to the riding school he found appellee had been waiting for him for a little more than an hour. Patterson returned without his wheel about 7 o'clock p. m., and appellee took one of appellant's wheels from the riding school in the presence and with the knowledge of Patterson, and said to an employe of appellant at the time that he was going to ride the wheel to supper and would then ride to the factory of Smith, Day & Company, and would return to the riding school at about 8 o'clock p. m.; that he did not take the wheel

The Indiana Bicycle Company *v.* Willis.

with the intention of stealing it; that before the arrest
Staley learned that before leaving the riding school
appellee had left word where he was going, and when
he would return; that appellee rode directly from said
riding school to his boarding house, and after he had
had his supper and a short conversation with his land-
lady, rode thence to the factory of Smith, Day & Com-
pany, and was at said factory talking to a workman
when he was arrested.   The verdict further states that
Otis Birge was at the riding school when appellee
took the wheel, and that Staley was first informed of
the taking by Birge; that Staley sent John McCarty,
an employe of the appellant to the factory of Smith,
Day & Company, to get the wheel, and instructed him
to arrest appellee; that before Staley sent McCarty,
Birge had told Staley that appellee had just taken a
wheel of appellant from the riding school and ran
down the stairs with it, and that he, Birge, had called
to appellee to stop, and ran after appellee, and that
when Birge reached the street appellee was out of
sight; that Birge was unfriendly to appellee; that be-
fore Staley sent McCarty after the wheel he went to
the riding school and inquired of Patterson the cir-
cumstances relative to said taking by appellee, and
that Patterson did not tell Staley that he, Patterson,
had given appellee permission to take the wheel; that
Staley telephoned Smith, Day & Company, and said
for them to let him know when appellee came there;
that before the arrest, Staley learned where appellee
was going with the wheel; that before the arrest
Staley did not make such an investigation of the cir-
cumstances under which the wheel was taken as an or-
dinarily prudent person would have made under the
circumstances; that McCarty took a police officer with
him to Smith, Day & Company's, who arrested appel-
lee; that when arrested appellee told the officer that

he had permission to take the wheel, and named the person whom he claimed gave him permission to take it; that when the policeman asked him whose wheel he had, he answered, "It is mine while in my possession, it belongs to the Indiana Bicycle Company;" that on the facts the policeman hesitated to detain appellee, but was directed to take him into custody by Staley, who was then present; Staley had no communication with the officers prior to the time he first saw them at Smith, Day & Company's; that in all Staley did he was acting for appellant; that he took no legal counsel before the arrest; that under the circumstances an ordinarily prudent person would have sought legal advice; that he could have known before the arrest of the circumstances under which the wheel was taken if he had made such inquiry as an ordinarily prudent person would have made under the circumstances; that the facts relating to the taking of the wheel of which Staley had knowledge when he sent McCarty to Smith, Day & Company's, and at the time of the arrest and preliminary examination were not such as would lead an ordinarily prudent man, under the circumstances, to believe that appellee stole the wheel; that Staley made no further investigation of the circumstances under which the wheel was taken after the arrest and before the preliminary hearing, and took no counsel during said time; that appellee was confined in the county jail on said charge of grand larceny for three days and nights, and in the station house one night, and that he did not procure the postponement of the preliminary hearing from March 20 to March 23; that appellant after the arrest and discharge ratified all the acts of Staley in the arrest and detention of appellee; that Staley, acting for appellant, maliciously caused appellee to be arrested on said charge of grand larceny, and maliciously

caused him to be imprisoned in the police station and county jail on said charge.

While there are other necessary elements in the case, yet the most essential question to be determined is whether there was probable cause for the prosecution complained of as malicious. Such facts must be found by the jury as that the court can say there was want of probable cause, and answers by the jury that the prosecution was instituted and carried on without probable cause cannot be considered in determining that question. And in determining the question of probable cause those facts and circumstances which were known to appellant or to its representative at and before the time the prosecution was instituted are alone to be considered. Probable cause has been defined to be "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion that the person arrested is guilty." *Bacon* v. *Towne,* 4 Cush. 217; *Pennsylvania Co.* v. *Weddle,* 100 Ind. 138; *Lacy* v. *Mitchell,* 23 Ind. 67; Cooley on Torts, 181.

The decisions are not agreed, nor are the text writers, as to whether the question of probable cause is one of law or one of mixed law and fact. In the case of *Pennsylvania Co.* v. *Weddle, supra,* after giving the views expressed by a number of text writers and courts, the opinion says: "In a limited sense, the question of whether there is or is not probable cause is one of mixed law and fact, but it is not so in such a sense as to permit the court to surrender its function of deciding questions of law, nor to usurp that of the jury to decide questions of fact. The question is one of mixed law and fact thus far, and no farther, namely: When the facts are contested, the jury decides the contest as to the facts; but in all cases the

court instructs them as to the law upon the facts."
See Newell Mal. Pros. 276, *et seq.*

But in a very recent case it was held that whether
or not there was probable cause is a question of law
for the court to determine, and it was held in that
case that where a special verdict is returned in such a
case, the jury must find the facts, and upon the facts
found by the jury the court must as a matter of law
determine whether there was or was not probable
cause. *Helwig* v. *Beckner* (Ind. Sup.), 46 N. E. 644. See
*Cottrell* v. *Cottrell*, 126 Ind. 181; *Roberts* v. *Kendall*,
12 Ind. App. 269.

In the case at bar, the jury stated the facts leading
up to the arrest and prosecution, and then stated that
appellant by its representative, in causing the arrest
and prosecution, did not act as a reasonably prudent
man would act under like circumstances.  This find-
ing by the jury was proper, and is to be considered
as the finding of an ultimate inference of fact in de-
termining the question whether there was probable
cause for instituting criminal proceedings.  Such a
finding has been held to be proper in determining the
question of negligence.  In *Seybold* v. *Terre Haute, etc.,
R. R. Co., ante,* 367, Black, J., said: "Under the pres-
ent state of the law as held in this State, while it is
not proper, in a special verdict, to find or state that a
party was or was not negligent, or that an act was or
was not negligently done or omitted, it is proper in
some cases in special verdicts to insert a statement or
finding in words to the effect that a party did or did
not, in certain circumstances, the facts thereof being
stated, act as a person of ordinary prudence would act
under like circumstances."

The finding of the jury that the arrest was made
and the prosecution instituted maliciously by Staley,
representing appellant, was a finding within the

province of the jury.   Whether the acts done by Staley were done with malice was a question of fact to be determined from all the facts and circumstances in evidence.   Nor will the law infer malice from want of probable cause.   *Newell* v. *Downs*, 8 Blackf. 523; *Wilkinson* v. *Arnold*, 11 Ind. 45.   "It [malice] must be alleged in the complaint and establised by the evidence, and, when a special verdict is returned, it must be found as a fact by the jury; and, where there is no finding of malice, such verdict will not support a judgment for the plaintiff in such action.   Even though the facts found in a special verdict show the want of probable cause, yet neither this nor the trial court can infer malice therefrom, as that inference can only be drawn by the triors of the facts.   *   *   *   There is no finding in the special verdict that appellant, in causing appellee to be indicted, acted maliciously."   *Helwig* v. *Beckner*, *supra*.   And for this reason the judgment in that case was reversed.   Newell Mal. Pros. 248; *Ammerman* v. *Crosby*, 26 Ind. 451; *Oliver* v. *Pate*, 43 Ind. 132.

Taking into consideration all the facts set out in the special verdict relating to the conduct of appellant's agent who instituted the criminal proceedings against appellee, the information upon which he caused the arrest to be made, the haste in which it was done, and all the facts bearing upon these questions as heretofore set out, we think the lower court did right in holding that the verdict shows a want of probable cause.

Appellant's counsel have argued at great length that the special verdict is insufficient, because it fails to find that appellee is innocent of the crime with which he was charged.   The question of the guilt or innocence of the appellee might go to the question of probable cause, and it has been said that a conviction

in an inferior court, although an acquittal followed upon appeal, is conclusive of probable cause. Newell on Mal. Pros. 296 and cases cited; Cooley on Torts, 185 *et seq.* But the presence or absence of probable cause does not depend upon the guilt or innocence of the accused. There may be probable cause, although the accused is innocent. *Hays* v. *Blizzard,* 30 Ind. 457. So that if the facts found show want of probable cause and malice, it is not material whether the accused is guilty or innocent of the crime with which he was charged. In the case of *Terre Haute, etc., R. R. Co.* v. *Mason,* 148 Ind. 578, the court said: "It is true that before the action for damages can be successful, it must be shown that the plaintiff has been acquitted of the crime charged, or that the action otherwise terminated in his favor. Such acquittal, together with the presence of malice and the absence of probable cause, is a necessary circumstance to justify the bringing of the action for damages. Cooley, Torts, 181. But the acquittal of the plaintiff has no further relation to the action for damages. The inquiry must, therefore, be, not whether the plaintiff was or was not guilty of the offense for which he was prosecuted, but whether, at the time when the prosecution began, there was or was not probable cause for bringing it, and whether the defendant acted with or without malice." Cooley on Torts, 180 *et seq.; Carl* v. *Ayers,* 53 N. Y. 14; *Bacon* v. *Towne,* 4 Cush. 217; *Gallaway* v. *Burr,* 32 Mich. 332; *Scotten* v. *Longfellow,* 40 Ind. 23; *Skidmore* v. *Bricker,* 77 Ill. 164; *Lytton* v. *Baird,* 95 Ind. 349.

The only remaining error assigned and discussed by counsel is the overruling of the motion for a new trial. As the grounds for a new trial which are discussed by counsel relate to the admission of certain evidence, that the damages assessed are excessive and that the

evidence is not sufficient to support the verdict, it is necessary to determine whether the contention of counsel for appellee that the evidence is not in the record is correct. The record shows that the bill of exceptions which purports to contain the longhand manuscript of the evidence was presented to the trial judge and signed August 26, 1896. A record entry by the clerk made in vacation and the final certificate of the clerk to the transcript and the file mark of the clerk, all show that the longhand manuscript of the evidence was filed in the office of the clerk on August 28, 1896. The statute authorizing the use of the stenographer's transcript on appeal provides that the original longhand manuscript of the evidence may be filed with the clerk by the party entitled to the use of the same, and in case of appeal it shall be the duty of the clerk, if requested to do so by said party, to certify such manuscript "when the same shall have been incorporated in the bill of exceptions," to the Supreme or other court of appeal. Section 1476, Burns' R. S. 1894 (1410, Horner's R. S. 1896).

It has been often declared that the duty of settling and signing a bill of execptions is judicial. Incorporating the longhand copy of the evidence in the bill is the act of the judge, and is done by the act of the judge in approving and signing the bill. It cannot be embodied in the bill until it has been filed in the clerk's office.

In the case of *Beatty* v. *Miller*, 146 Ind. 231, it appeared, as in the case at bar, that the longhand manuscript of the evidence was filed two days after the bill was signed by the judge, and it was held this did not bring the evidence into the record.

As the record shows that the bill of exceptions was signed by the trial judge on August 26, 1896, and that the longhand copy of the evidence was not filed in the

clerk's office until August 28, 1896, it thus appears that the evidence was not filed in the clerk's office before it was incorporated in the bill of exceptions and before the bill of exceptions containing the same was signed by the judge. The evidence is not in the record. *DeHart* v. *Board, etc.,* 143 Ind. 363.

We find no error in the record for which the judgment should be reversed, and it is, therefore, affirmed.