## TRELOAR *v* HARRIS.

[No. 9,315.   Filed December 4, 1917.]

1. MALICIOUS PROSECUTION. — *Action.* — *Grounds.* — *Proceeding to Determine Sanity.*—A proceeding alleged to have been maliciously instituted and prosecuted by defendant against plaintiff under §3691 *et seq.* Burns 1914, §2842 *et seq.* R. S. 1881, to determine whether plaintiff was a person of unsound mind and entitled to treatment in a state hospital for the insane, was not a special proceeding, extra judicial in character, but a civil action affording grounds for an action for malicious prosecution, if maliciously begun without probable cause and terminating in a finding and judgment in favor of plaintiff. p. 64.

2. MALICIOUS PROSECUTION.—*Action.*—*Grounds.*—The gist of the action for malicious prosecution is that the plaintiff has been

improperly made the subject of legal process to his damage, the essential elements being a malicious prosecution of some legal proceeding without probable cause before some judicial officer or tribunal resulting in humiliation, vexation and expense to the person wrongfully prosecuted. p. 67.

3. MALICIOUS PROSECUTION.—*Judicial Proceeding.*—A judicial proceeding means any proceeding for the purpose of obtaining such remedy as the law allows, and when a regular constituted court of justice is authorized to hear and determine a question of fact or a mixed question of law and fact, upon evidence to be produced before it, and thereupon to render a decision affecting the material rights or interests of one or more persons, the proceeding must be regarded as judicial. p. 68.

4. MALICIOUS PROSECUTION.—*Action.—Complaint.—Sufficiency.*—In an action for malicious prosecution, a complaint alleging that defendant maliciously and without probable cause brought an action before a justice of the peace falsely charging that plaintiff was insane and that defendant had observed the first signs of insanity about four years previous to the filing of such proceeding, specific acts being set forth, that judgment was rendered declaring plaintiff to be of sound mind, and that he was imprisoned for several days prior to his acquittal, is sufficient as against demurrer, though upon motion the pleader might properly have been required to state specifically upon what section of the statute the original proceedings to determine plaintiff's sanity was based. p. 69.

5. APPEAL.—*Waiver of Error.—Briefs.*—Grounds of a motion for a new trial are waived by appellant's failure to present them in his points and authorities. p. 69.

6. MALICIOUS PROSECUTION.—*Instructions.—Probable Cause.*—In an action for malicious prosecution of a proceeding to have plaintiff declared insane, an instruction that unless defendant had an honest and strong suspicion that plaintiff was insane there was no probable cause, was not erroneous. p. 70.

7. MALICIOUS PROSECUTION.—*Instructions.—Probable Cause.*—In an action for damages resulting from the alleged malicious prosecution of a proceeding to have plaintiff declared insane, an instruction requiring that defendants have an "honest and strong belief" in plaintiff's insanity to show probable cause, was technically erroneous. p. 70.

8. MALICIOUS PROSECUTION.—*Probable Cause.—Honest Belief.*—A suspicion strong enough to create an honest belief that one is insane is sufficient to show probable cause for the prosecution of a proceeding to have such person declared insane. p. 70.

9. MALICIOUS PROSECUTION.—*Instructions.—Harmless Error.—Assumption of Facts.*—In an action for malicious prosecution, an instruction that the suing out of a writ of insanity against one alleged to be insane, "as was done by the defendant in this case," when the person charged is not insane, is a wrongful act, and if done without lawful justification or excuse it is malicious, is not prejudicial to defendant because assuming, as proved, material facts, where defendant did not dispute the filing of the affidavit required in such cases by §3692 Burns 1914, §2843 R. S. 1881. p. 70.

10. MALICIOUS PROSECUTION.—*Instructions.—Probable Cause.*—In an action for malicious prosecution of a proceeding to have plaintiff declared insane, a requested instruction purporting to enumerate the facts which would authorize a verdict for defendant was defective and properly refused, where it made defendant's honest belief of plaintiff's insanity based on defendant's knowledge of plaintiff's acts and conduct, possessed at the time of the institution of the sanity inquest, alone sufficient to show probable cause. p. 71.

11. MALICIOUS PROSECUTION.—*Probable Cause.*—To show probable cause for the prosecution of a proceeding to have a person declared of unsound mind it must appear that the prosecutor made such inquiry as the case rendered convenient and proper, and which a man of caution would make under like circumstances, but, where the personal knowledge of the prosecutor is such that it induces in him an honest belief of the probable guilt of the accused and would induce that belief in the mind of a man of ordinary prudence and caution, further inquiry is unnecessary. p. 71.

12. APPEAL.—*Harmless Error.—Instruction.*—In an action for malicious prosecution of a proceeding to have plaintiff declared a person of unsound mind, an instruction, upon condition that the jury find the other facts made necessary by it, making defendant's belief as to plaintiff's insanity the only other essential element of probable cause and omitting any requirement that the facts enumerated should be such as would create a belief of guilt in a man of ordinary prudence and caution, was not prejudicial to defendant where the other findings made necessary by such instruction were such as to necessitate the inference in the minds of men of ordinary intelligence and prudence that plaintiff was of unsound mind. p. 72.

13. MALICIOUS PROSECUTION.—*Instruction.—Probable Cause.*—In an action for malicious prosecution of a proceeding to determine plaintiff's sanity, an instruction on the subject of probable cause, which affirmatively did no more than inform the jury that the

finding of the facts hypothetically stated therein would require it to find that defendant had probable cause, and left the jury to understand that only a finding of all of such facts would authorize a finding of probable cause, was prejudicial to defendant and cause for reversal, where the facts stated in such instruction were so numerous and of such a character that several combinations or groups thereof less than the whole number would have justified a man of ordinary intelligence, prudence and caution in believing that plaintiff was of unsound mind. p. 77.

14. MALICIOUS PROSECUTION.—*Probable Cause.—Advice of Counsel.* —Where the person charged as instituting a malicious prosecution honestly sought the advice of counsel and disclosed to him all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence, and the counsel advised prosecution which was then instituted, there was probable cause. p. 77.

15. EVIDENCE.—*Presumptions.—Knowledge of Law.*—One instituting a proceedings under §3691 *et seq.* Burns 1914, §2842 *et seq.* R. S. 1881, to determine whether another is insane and entitled to treatment in a state hospital for the insane, is chargeable with knowledge of the provisions and purposes of the statute. p. 79.

16. MALICIOUS PROSECUTION.—*Probable Cause.—Charge of Insanity.* —In an action for malicious prosecution of a proceedings predicated on §3691 *et seq.* Burns 1914, §2842 *et seq.* R. S. 1881, to determine whether plaintiff was insane and entitled to treatment in the state insane hospital the inquiry as regards the question of probable cause was whether defendant, at the time he instituted the original proceeding, had such knowledge and information as. would have created in the mind of a person of ordinary prudence and caution a strong suspicion that plaintiff was of unsound mind to such a degree that he was a proper subject to be admitted as a patient in the state hospital for the insane, and whether defendant entertained an honest belief that plaintiff was of unsound mind. p. 79.

17. MALICIOUS PROSECUTION.—*Probable Cause.—Jury Questions.*— In an action for a malicious prosecution of a proceeding based on §3691 *et seq.* Burns 1914, §2842 R. S. 1881, to determine plaintiff's sanity, whether the evidence shows that defendant, at the time he filed the proceeding, honestly believed plaintiff to be insane, and whether the facts would induce in the mind of a man of ordinary intelligence and prudence an honest belief that plaintiff was insane, are questions of fact for the jury. p. 81.

From Clark Circuit Court; *George B. McIntyre,* Special Judge.

Action by James Harris against Henry Treloar. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Edward C. Hughes* and *H. W. Phipps,* for appellant.

*Laurent A. Douglas* and *George C. Kopp,* for appellee.

HOTTEL, J.—This is an appeal from a judgment for $650 in an action brought by appellee to recover damages alleged to have been sustained by him as a result of an alleged malicious prosecution instituted against him by appellant.

The amended complaint is in one paragraph and charges in substance: That on November 28, 1913, the appellant maliciously and without probable cause brought an action against appellee in the court of James S. Keigwin, a justice of the peace in and for Jeffersonville township, Clark county, Indiana, upon a false and groundless charge, viz., that appellant charged appellee with being insane, that he observed the first signs of insanity about four years previous to the filing of such proceedings; that said signs consisted of appellee's running as if in fear of some one, irrational talk, and manifestations of violence and anger; that such proceedings were had that upon the trial of said cause on December 1, 1913, a judgment was rendered for the appellee, declaring him to be of sound mind, and said action and suit was thereupon terminated, and appellee was acquitted of said charge; that on November 29, 1913, appellee was taken into custody by an officer, and taken to the county jail, where he was incarcerated and held as a prisoner from said date until December 1, 1913, the date of his trial and acquittal; that during appellee's

said absence, and because thereof, his home was wholly destroyed by fire; that such building and the contents thereof were of the value of $500; that he had therein $250 in gold and $150 in paper money; that $30 of the gold and $150 of the paper money were destroyed and totally lost because of said fire; that the destruction of his home and contents as aforesaid and the loss of said money because of said fire were due to the action of appellant in causing him to be placed in jail and taking him away from his home, thereby leaving said home and property unprotected and uncared for; that, if it had not been for the aforesaid conduct and action of appellant, he could have protected his home and saved his money and prevented his property from being burned and destroyed; that because of said malicious action on the part of appellant, without probable cause, appellee has suffered great physical pain and mental anguish and humiliation and was caused to expend fifty dollars attorney's fees to defend said insanity proceedings, whereby he has been damaged in the sum of $5,000 as aforesaid. A demurrer to this complaint was overruled. A motion for new trial and a motion in arrest of judgment were each overruled. Said several rulings of the trial court are separately assigned as error and relied on for reversal.

The memorandum accompanying said demurrer challenges the sufficiency of the complaint on four grounds, viz.: (1) It fails to show by direct averment the nature of the charge alleged to have been filed by appellant against appellee; (2) the second, third, and fourth grounds, in different language, present substantially the same objection, and are to the following effect, viz., that the proceeding alleged to have been maliciously instituted

and prosecuted by appellant against appellee, being a proceeding brought under the statute, §§3691, 3692 *et seq.* Burns 1914, §§2842, 2843 R. S. 1881, to determine whether appellee was a person of unsound mind and entitled to treatment in the insane hospital of this state, is not a civil action, but is a special proceeding, extrajudicial in character, the institution or prosecution of which will not authorize an action for malicious prosecution. The appellant, in support of his contention, cited the following cases: *Gooding* v. *State, ex rel.* (1906), 39 Ind. App. 42, 78 N. E. 257; *Galbreath* v. *Black* (1883), 89 Ind. 300; *Leinss* v. *Weiss* (1904), 33 Ind. App. 347, 71 N. E. 254; *Naanes* v. *State* (1896), 143 Ind. 299, 304, 42 N. E. 609; *Berry* v. *Berry* (1896), 147 Ind. 176, 46 N. E. 470.

The first case lends no support to his contention. The second case, *supra,* holds that a proceeding for the appointment of a guardian under §2545 R. S. 1881, §2715 Burns 1914, is *ex parte* in character, authorized by a special statute, and has few of the qualities or attributes of a civil action. This case, in so far as it holds that such proceeding is *ex parte,* has been overruled by the later decisions of the Supreme Court. *Martin* v. *Motsinger* (1892), 130 Ind. 555, 30 N. E. 523; *Jessup* v. *Jessup* (1893), 7 Ind. App. 573, 34 N. E. 1017; *Berry* v. *Berry, supra.*

The Supreme Court has expressly recognized that an unsuccessful attempt to have one declared of unsound mind under §2545, *supra,* where such proceeding is instituted without probable cause and with malice, furnishes a cause of action for malicious prosecution. *Lockenour* v. *Sides* (1877), 57 Ind. 360, 26 Am. Rep. 58, and cases cited.

*Leinss* v. *Weiss, supra,* simply holds that the mere

fact that one may have once been admitted to the hospital for the insane is not of itself notice to those who might deal with him in good faith, that the discharge of such a person as cured is as much notice of the fact that such person is sane as the inquest and admission to such hospital is notice of his insanity.

The case which in our judgment lends most support to appellant's contention is that of *Naanes* v. *State, supra,* wherein the court, at page 304, speaking of the proceeding provided by the act of 1881 (being §2843 R. S. 1881, §3692 Burns 1914) says that: "It is extrajudicial, and is not intended, as is the judicial proceeding *in rem* for the appointment of a guardian for the person and property of a lunatic, to fix the status of the person over whom the inquisition is held." When we look to the facts of said case in which this language was used and the question there under consideration, we do not think it of controlling influence as affecting the question here under consideration. The defendant in that action, who was being prosecuted for a crime, had interposed a plea of insanity. At the trial the state was permitted to introduce in evidence the proceedings of an examination by a commission appointed under §2843 R. S. 1881, *supra,* to inquire into the sanity of the defendant, such proceeding and examination having been had a short time before such trial, and the Supreme Court, in support of its holding that the admission of such evidence constituted error, very properly we think, held that such proceedings were for the purpose of determining whether the person alleged to be insane is a proper subject to be admitted as a patient for treatment in the hospital for the insane; and hence that *such proceeding was extrajudicial in so*

*far as there might be any implied adjudication fixing
the mental status of the person alleged to be insane,
for the purpose of any action other than such proceed-
ing, or for any purpose other than the single purpose
contemplated by such proceeding.* We do not think,
however, that the court meant that the proceedings
before such examining board and the judgment
therein were themselves extrajudicial, or that they
were extrajudicial in the sense that they would fur-
nish no ground for complaint or cause of action in
favor of the party against whom they were instituted,
when they were maliciously begun without probable
cause and terminated in a finding and judgment
against the prosecutor thereof.

The gist of the action for malicious prosecution is
that the "plaintiff has improperly been made the sub-
ject of legal process, to his damage." *Herbe-
ner* v. *Crossan* (1902), 4 Pennewill (Del.) 58,
55 Atl. 223. The essential elements for such
an action is a malicious prosecution of some legal
proceeding without probable cause before some judi-
cial officer or tribunal. The scandal or the humilia-
tion, vexation, and expense resulting to the person
thus wrongfully prosecuted furnishes the ground
upon which an action for malicious prosecution will
lie. *Turpin* v. *Remy* (1833), 3 Blackf. 210, 216;
*Coffey* v. *Myers* (1882), 84 Ind. 105. To the same
effect, see the following cases: *Lockenour* v. *Sides,
supra; McCardle* v. *McGinley* (1882), 86 Ind. 538, 44
Am. Rep. 343; *Pennsylvania Co.* v. *Weddle* (1885),
100 Ind. 138, 143; *Stancliff* v. *Palmeter* (1862), 18 Ind.
321, 324, and cases cited; also, Hilliard, Torts 270,
§14; Hilliard, Torts (3d ed.) 426, 427, and cases there
cited.

A general definition of a "judicial proceeding" is

as follows: "Judicial proceeding means any pro-
ceeding for the purpose of obtaining such
3.    remedy as the law allows." *State, ex rel.* v.
*McCafferty* (1909), 25 Okl. 2, 105 Pac. 992, 997,
L. R. A. 1915A 639. A more specific definition ap-
pears in the case of *Martin* v. *Simpkins* (1894), 20
Colo. 438, 444, 38 Pac. 1092, 1094, and is as follows:
"This much, however, may be safely said: (The court
had pointed out the difficulty of ascertaining the line
between the ministerial and judicial acts.) When a
regularly constituted court of justice is clothed with
authority to hear and determine a question of fact
or a mixed question of law and fact, upon evidence,
written or oral, to be produced before such court, and
thereupon to render a decision affecting the material
rights or interests of one or more persons or bodies
corporate, such proceeding by the court must be
regarded as judicial, and the decision by the court
may properly be denominated a judgment."

For special cases in which the proceedings were
held to be judicial, see *Imperial Water Co.* v. *Board,
etc.* (1912), 162 Cal. 14, 120 Pac. 780, 782; *Scanlon* v.
*Deuel* (1911), 176 Ind. 208, 94 N. E. 561; *People, ex
rel.* v. *Board, etc., Police Commissioners* (1898), 155
N. Y. 40, 49 N. E. 257; *In re Town of Hempstead*
(1898), 32 App. Div. 6, 7, 52 N. Y. Supp. 618; *People,
ex rel.* v. *Russell* (1865), 29 How. Prac. (N. Y.) 176,
178; *Kellogg* v. *Cochran* (1890), 87 Cal. 192, 25 Pac.
677, 12 L. R. A. 104; *Hiersche* v. *Scott* (1901), 1 Neb.
(Unof.) 48, 95 N. W. 494; *Manz* v. *Klippel* (1914),
158 Wis. 557, 149 N. W. 375.

The three cases last cited were cases in which it
was held that a prosecution of proceedings under
statutes similar to §3691 *et seq., supra,* when mali-

cious and without probable cause, afforded a cause of action for malicious prosecution.

We think that both reason and precedent necessitate the conclusion that appellee's complaint states a cause of action, and hence that no error 4. resulted from overruling the demurrer thereto.

It is proper to say in this connection that the complaint is subject to criticism, in that its averments do not make it clear upon what section of the statute the original proceeding filed by appellant was based, and upon motion the trial court would have been justified in requiring it to be made more specific. It also contains some averments which doubtless would have been stricken out on motion. However, the evidence clearly showed the original proceeding to have been predicated on §3691, *supra,* and the court in its instructions to the jury expressly took out of the case all the averments of the complaint relative to appellee's being placed in jail, the burning of his home, and all questions of damages resulting therefrom.

Appellant, in his brief, under his propositions and authorities, has presented only those grounds of his motion for new trial which challenge certain 5. instructions given and refused, and hence has thereby waived all other grounds of said motion. The respective instructions upon which error is predicated, and which are presented in appellant's points and authorities, will be considered. Instructions Nos. 17 and 18, given at appellee's request, are challenged on the ground that by each of them the jury was erroneously told that: "If appellant did not have an honest and strong belief that appellee was insane then there existed no probable cause."

In instruction No. 17, the word *"suspicion"* is used, instead of the word "belief," and the language objected to has the approval of decided cases.

6. *George* v. *Johnson* (1898), 25 App. Div. 125, 49 N. Y. Supp. 203; *Bacon* v. *Towne* (1849), 4 Cush. (58 Mass.) 217, 239; *Harpham* v. *Whitney* (1875), 77 Ill. 32, 42; *Keep* v. *Griggs,* (1882), 12 Ill. App. 511, 517; *Stone* v. *Stevens* (1837), 12 Conn. 219, 230, 30 Am. Dec. 611.

Instruction No. 18 contains the word *"belief"* and is, we think, subject to criticism, in that it required appellant's belief in the insanity of appellee not only to be honest but *"strong"* in order to show probable cause. While a *strong suspicion* of insanity was required for the purpose indicated, a suspicion strong enough to create an honest belief is, we think, sufficient. In other words, an honest belief is at least the equivalent of a strong suspicion. However, said infirmity is so purely technical that we would hesitate to reverse the judgment below if this were the only error appearing at the trial.

Instruction No. 20, given at appellee's request, is objected to on the ground that it assumed, as proved, material facts. The part of the instruction to which we assume this objection is intended to be addressed is the following: "The suing out of a writ of insanity against one, as was done by defendant in this case, when the one charged is not insane, is a wrongful act, if done without lawful justification or excuse it is maliciously done." While the language used in the instruction may be somewhat ambiguous, its meaning could not have been misunderstood by the jury, and appellant does not dispute the filing of the affidavit required in such cases by

§3692 Burns 1914, *supra,* and hence no harm could have resulted from the court's assuming such fact as true. *Hindman* v. *Timme* (1893), 8 Ind. App. 416, 35 N. E. 1046; *Van Camp, etc., Iron Co.* v. *O'Brien* (1901), 28 Ind. App 152, 62 N. E. 464.

Appellant complains of the court's refusal to give instruction No. 18, tendered by him. This instruction purports to enumerate the facts which would authorize the jury in returning a verdict for the appellant, and is defective, in that it makes appellant's honest belief of appellee's unsoundness of mind, based on appellant's conversations with his neighbors, and his personal knowledge of abnormal acts and conduct of appellee, alone sufficient to warrant such a verdict. While such a belief of appellant as to the condition of mind of appellee, based on this knowledge and information of appellee's acts and conduct, possessed at the time of the institution of said proceedings, was a necessary element of probable cause, it alone was not sufficient to show such cause. *Indiana Bicycle Co.* v. *Willis* (1897), 18 Ind. App. 525, 533, 48 N. E. 646; *Lawrence* v. *Leathers* (1903), 31 Ind. App. 414, 419, 68 N. E. 179, and cases there cited. Said instruction was therefore properly refused.

Instruction No. 7, given by the court, objected to, is as follows: "Probable cause is that apparent state of facts found to exist upon reasonable inquiry; that is such inquiry as the given case renders convenient and proper, which would induce a reasonable, intelligent, and prudent man to believe the person against whom the charge is preferred or action brought or filed is insane or of unsound mind, and if defendant brought an action against plaintiff maliciously in the court of James S. Keigwin, charg-

ing plaintiff with being insane, without making the inquiry that a prudent, cautious person would make under like circumstances, then and in that case, as a matter of law, the bringing of the action or in other words the prosecution was instituted without probable cause.''

It is insisted that this instruction is erroneous, in that it told the jury that if appellant did not make the inquiry that a prudent, cautious person would make under like circumstances, there was no probable cause for the prosecution of the original proceeding against appellee. The cases of *Lacy* v. *Mitchell* (1864), 23 Ind. 67, and *Hutchinson* v. *Wenzel* (1900), 155 Ind. 49, 56 N. E. 845, cited by appellant, lend no support to this objection, but on the contrary, impliedly at least, recognize that substantially the inquiry indicated in the instruction is an essential of probable cause. The inquiry essential in such cases is that which the given case renders convenient and proper, and which a man of prudence and caution would make under like circumstances. Of course, where the personal knowledge of the prosecutor is such that it induces in him an honest belief of the probable guilt of the accused, and is such as would induce such a belief in the mind of a man of ordinary prudence and caution, further inquiry is not necessary, and it was not made necessary by the standard fixed by the instruction here involved.

The only other instruction objected to is No. 12, given by the court of its own motion. It covers five and one-half closely typewritten pages of appellant's brief, and no good purpose could be served by setting it out in the opinion. It apparently attempts to cover the entire field of facts concerning which there was evidence and which in

any way tended to show probable cause, including the numerous acts of appellee testified to by the witnesses for the purpose, we assume, of showing the condition of his mind, and winds up by telling the jury, in effect, that if appellant believed said facts and, acting upon said information after making such inquiry as a prudent, cautious person would make, did believe that appellee was a person of unsound mind, and while acting under said belief made said sworn statement, then appellant had probable cause, and the verdict should be in his favor even though he made such affidavit maliciously.

It will be observed that this instruction, upon the condition that the jury find the other facts made necessary by it, makes appellant's belief the only other essential element of probable cause, and omitting any requirement that the enumerated facts should be such as would create a belief of guilt in a man of ordinary prudence and caution. This omission, however, could not have prejudiced appellant, and, in view of the other findings made necessary by the instruction, the court was perfectly justified in telling the jury that, if, in addition thereto, it found that appellant believed that appellee was a person of unsound mind, he had probable cause for filing his original proceeding and should have a verdict in his favor. This is so because the other findings made necessary by said instruction were susceptible to but one inference by men of ordinary prudence and caution, viz., such facts were such as to necessitate in the minds of all reasonable men of ordinary intelligence and prudence a belief that appellee was of unsound mind. Indeed, the infirmity in the instruction is the numerous facts, the existence and nonexistence of which it, impliedly at least, required the jury to find

before it could find that appellant had probable cause, and it is of this feature that appellant complains.

. The giving of this instruction was doubtless prompted by the numerous decisions of this and other jurisdictions which make it the duty of the court to determine as a matter of law in the given case whether there was or was not probable cause. In recognizing and giving expression to this doctrine or rule of law, it will be found that the courts in most jurisdictions have said in effect that, where the evidence affecting the question of probable cause is undisputed, the court must say whether it did or did not exist; and where the facts affecting such question are disputed, while the court must permit the jury to determine what particular facts affecting this as well as all other issues in the case were proved, the duty of determining what particular facts, if proved, show the existence of probable cause and its absence remain with the court, and in such a case it becomes the duty of the court to group the facts or the several combinations of facts, if there be more than one combination, within the evidence which the court can say as a matter of law, if proved, show the existence of probable cause and, on the other hand, group the facts or combination of facts which, if proved, show the absence of such cause, and then hypothetically state to the jury the several groups of facts, telling the jury with reference to each particular group stated that, if it finds such facts to have been proved, it must in that event find that there was or was not probable cause as the facts so stated require. .

In some of the cases the courts have said that the question was a mixed one of law and fact; but when such expression has been used it, in most cases at least, has been in the sense that it was for the jury

to say what facts affecting such question had been proved by the evidence, and for the court to say whether the facts found to be proved showed the existence or the absence of probable cause which is in effect a recognition of the rule as above announced.

Indeed, we think an examination of the law writers and the decisions of the courts of various jurisdictions will disclose that the courts of most jurisdictions have expressed the rule governing in such cases substantially as above stated. 26 Cyc 105-109, and cases in notes Nos. 19-23; *Matson* v. *Michael* (1909) 81 Kan. 360, 105 Pac. 537, L. R. A. 1915D 1, and note L. R. A. 1915D 5 *et seq.;* Newell, Malicious Prosecution 276 *et seq.;* Stephens, Malicious Prosecution, ch. 7, 57-83; *Lawrence* v. *Leathers, supra; Pennsylvania Co.* v. *Weddle, supra; Indianapolis Traction, etc., Co.* v. *Henby* (1912), 178 Ind. 239, 97 N. E. 313; *Cottrell* v. *Cottrell* (1890), 126 Ind. 181, 25 N. E. 905; *Cleveland, etc., R. Co.* v. *Dixon* (1912), 51 Ind. App. 658, 96 N. E. 815.

However, such examination will also reveal that while there is substantial unanimity and accord in the decided cases in the recognition and expression of the rule, there is apparently a great diversity of opinion and confusion in its application to the particular cases decided. This no doubt results from the fact that probable cause is naturally and logically a question of fact for the jury. Many forms of expression are used in the decided cases in defining probable cause (for which see note to *Matson* v. *Michael,* L. R. A. 1915D 2, 3) all of which are bottomed upon the same proposition, viz., that the facts and circumstances which justify the charge in each particular case must be such as "would induce a reasonably intelligent and prudent man to believe the accused

person had committed, in a criminal case, the crime charged; and in a civil case, that a cause of action existed." *Lacy* v. *Mitchell, supra; Indianapolis Traction, etc., Co.* v. *Henby, supra.* What facts and circumstances would induce such a belief in the mind of a man of ordinary and reasonable intelligence and prudence is a fact which is essentially and peculiarly for the determination of a jury, but the courts, apparently prompted by a desire to encourage the prosecution of criminals, have deemed it advisable to shield and protect, rather than to punish, those who make an honest effort to secure such end, and for this reason, have reserved to themselves in cases of this character the right to determine said question.

An examination of the cases will also disclose that in the application of said rule the courts have never treated such question as one of law "in the full sense in which a preliminary question as to the admissibility of evidence is for the court, namely in the sense that *all the facts necessary to determine it must be passed on by the court.*" Thayer, Prelim. Treat. on Evidence 224. On the contrary, there has been, we think, a tendency to delegate to the jury the determination of all the essential or elemental facts that go to make up probable cause, leaving for the court the duty of determining the existence or absence of such ultimate fact. For a digest and review of the cases discussing this question, see note under *Matson* v. *Michael, supra,* and *Simmons* v. *Gardner,* L. R. A. 1915D 1-90. See, also, Thayer, Prelim. Treat. on Evidence 221-232; Stephens, Malicious Prosecution 57-83; Newell, Malicious Prosecution 276-283.

Whether, however, said question be regarded as one purely of law, wholly and solely for the court, or as a question of law in the more limited sense last indi-

cated, the instruction here involved was prejudicial to appellant, in the absence of other instructions covering the same subject-matter. This is so because, while the instruction affirmatively did no more than tell the jury that the finding of the facts hypothetically stated therein would require it to find that appellant had probable cause, yet from it the jury may have understood, and we think probably did understand, that nothing short of a finding of all of said facts would authorize them to find the existence of such cause, and yet the facts involved in said instruction authorizing a finding of probable cause and verdict for appellant were so numerous and of such a character that at least several combinations or groups thereof less than the whole number would have justified a man of ordinary intelligence, prudence, and caution in believing that appellee was of unsound mind, and entitled to admission in the hospital for the insane. The giving of such an instruction alone, without indicating other groups of facts within the evidence which would require a like verdict, was necessarily harmful to appellant and hence necessitates a reversal of the judgment below.

This conclusion disposes of the appeal, but, in view of the fact that the case must go back for another trial, and because of the conflict, herein indicated, in the decided cases as to the duty of the trial court in instructing the jury affecting the question of probable cause, we feel that something further should be said on this phase of the case for the future guidance of the trial court in the event of a retrial of the case.

As affecting this question, there was some evidence introduced to the effect that the appellant had gone to the prosecuting attorney before instituting the proceeding to have appellee admitted

to the state hospital for the insane; but our attention is called to no evidence, and in our examination of the record we have found none, to show that he made any disclosure of the facts and circumstances in his possession at the time affecting the question of appellee's mental condition, or that he was advised by such prosecutor in the matter of instituting such proceedings. The extent of the evidence upon this element affecting probable cause was merely that appellant went to the prosecutor, and the prosecutor without being advised as to the facts and circumstances directed him to the justice of the peace, whereupon, without further legal inquiry, information, or advice, he went to the justice of the peace and there filed the affidavit, answering the questions which the statute requires in such cases. The law affecting this branch of probable cause may be stated substantially as follows: In those cases where it appears from the undisputed evidence that the person charged as instituting the malicious prosecution honestly sought the advice of counsel, disclosing to him "all the material facts relating to the case, ascertained or ascertainable by the exercise of due diligence," and the counsel so put in possession of such facts advised the prosecution, and upon and pursuant to such advice such person instituted proceedings, it becomes the duty of the court in such a case to direct the jury that there was probable cause. At least two things must exist to show probable cause resulting from advice of counsel, viz.: (1) A complete and honest disclosure to such counsel by the person charged with the malicious prosecution of all the facts and circumstances affecting the case, ascertained or ascertainable by due diligence; (2) such counsel upon the facts thus disclosed must advise the prosecution. So

far as the proof discloses in this case, neither of these essential averments was shown, and hence the trial court should have said as a matter of law that probable cause had not been shown by any advice of counsel.

It follows, therefore, that in this case the main and controlling facts necessary to the determination of the question whether there was or was not probable cause turned on the evidence relating to the facts and circumstances affecting appellee's mental condition of which appellant had knowledge or information at the time he instituted the proceeding to have appellee admitted to said hospital.

The purpose of the act, under which the original proceeding upon which this action is brought, is to provide for care and treatment for those mentally afflicted and in need of the special care and treatment obtainable in the state hospital for the insane, and the purpose of the examining commission provided by §3 of said act (§3693 Burns 1914) is to determine whether the person alleged to be insane is a proper subject to be admitted as a patient into such hospital. *Naanes* v. *State, supra.*

The appellant as prosecutor of said proceedings was chargeable with knowledge of the provisions and purposes of said act, and hence the main inquiry in this case, so far as the question of probable cause was involved, was whether the appellant at the time he instituted the original proceeding had in his possession such knowledge and information as would have created in the mind of a person of ordinary prudence and caution a strong suspicion that appellee's mind was unsound in the sense that he was a proper subject to be admitted as a patient for treatment in the state

hospital for the insane, it being necessary, of course, to the establishment of such probable cause that the appellant himself, at the time he instituted such proceeding, entertained an honest belief that such was appellee's mental condition.

We might add, in this connection, that, as affecting the question whether malice should be inferred from want of probable cause, there would be the further question whether appellant in filing said proceeding was actuated by a motive or desire to obtain for appellee the benefit of hospital treatment, rather than by a selfish motive to serve some purpose of his own. *Thompson* v. *Bacon, etc., Co.* (1888), 56 Conn. 493, 496, 497, 16 Atl. 554.

Appellee's habits of life, personal traits, and characteristics, and numerous acts and incidents of his life and conduct were detailed before the jury as matters and circumstances personally known by appellant or brought to his knowledge before, and in his possession at the time he instituted his original proceeding, all for the purpose of throwing light on appellee's mental condition as known and viewed by appellant at the time he instituted said original proceeding against appellee, and for the ultimate purpose of determining whether he had probable cause for such prosecution. As affecting said question, the two facts above indicated were of controlling influence, viz.: (1) Did appellant himself honestly believe at the time he filed said proceeding that the appellee was insane in the sense indicated? (2) Would the said various and varied facts and circumstances so detailed before the jury induce in the mind of a man of ordinary and reasonable intelligence and prudence an honest belief that appellee was insane in said sense?

The line of cases, *supra,* which makes the question of probable cause solely and exclusively a question of law for the court in the technical sense that the court must not only determine such ultimate question, but must also determine what facts, if proved, will show each of several elemental facts which go to make up probable cause in the particular case, would, in the instant case, require the trial court to group and state hypothetically, either in one extremely lengthy and involved instruction, or in numerous separate instructions, each of the combinations of facts within the evidence which it thinks: (1) would require the jury to find that the appellant, at the time he filed the original proceeding against appellee, honestly believed appellee insane in the sense heretofore indicated; (2) to also group and state hypothetically each of the combinations of facts, within the evidence, which it thinks would induce in the mind of a man of ordinary prudence and intelligence an honest belief that appellee was insane in the sense indicated, and then tell the jury as to such respective combinations of facts that if it finds that they are proved by a preponderance of the evidence, it must then find that there was probable cause. The court would likewise be required to group and state hypothetically in the same way the facts which, if proved by the evidence, would require the contrary finding by the jury.

The evidence in this case shows that this would be an extremely difficult task, and it will be found that most of the cases herein cited which recognize the general rule that the question of probable cause is purely a law question hold that the first question, *supra,* viz., the belief of the person charged with the

malicious prosecution, is one of fact for the jury. See note and collection and digest of cases under *Matson* v. *Michael, supra,* L. R. A. 1915D 79 *et seq.*

As to the second question, *supra,* there is, as before indicated in this opinion, a more decided conflict appearing in the cases herein cited, but in our judgment the second question is in its nature and essence just as much a question of fact as the first. To hold that either of said questions, when they are controlling elements in the determination of probable cause, is a question of fact, is, in a technical sense at least, a violation of said general rule which treats probable cause, in all of its phases and elements, as purely and wholly a question of law, but, as before stated, there is ample authority for holding the first question one of fact, and many of the more recent decisions of courts of other jurisdictions warrant a similar holding as to the second question. *Martin* v. *Corscadden* (1906), 34 Mont. 308, 322, 86 Pac. 33; *Provident Savings, etc., Society* v. *Johnson* (1903), 115 Ky. 84, 89, 72 S. W. 754; *Johnson* v. *Miller* (1886), 69 Ia. 562, 567, 29 N. W. 743, 58 Am. Rep. 231; *Heyne* v. *Blair* (1875), 62 N. Y. 19, 25; *Peck* v. *Chouteau* (1886), 91 Mo. 138, 149, 150, 3 S. W. 577, 60 Am. Rep. 236; *George* v. *Johnson, supra; Jansen* v. *Halstead* (1901), 61 Neb. 249, 85 N. W. 78; *Jenkins* v. *Gilligan* (1906), 131 Ia. 176, 108 N. W. 237, 9 L. R. A. (N. S.) 1087; *Keiner* v. *Collins* (1914), 161 Ky. 696, 171 S. W. 599; *Hiersche* v. *Scott, supra; Shaul* v. *Brown* (1869), 28 Ia. 37, 4 Am. Rep. 151; *Donnelly* v. *Burkett* (1887), 75 Ia. 613, 616, 617, 34 N. W. 330; *Ahrens et al. Co.* v. *Hoeher* (1899), 106 Ky. 692, 697, 51 S. W. 194.

Such a holding will not violate the holdings of the decisions of our own state, except in the sense that the general rule, *supra,* has been frequently announced

and declared in such decisions. Some of our cases, however, in applying said rule, have evidently treated .it as meaning no more than that the ultimate question of probable cause is itself one of law, permitting cer- tain elements which enter into it to be treated as questions of fact for the jury. *Lytton* v. *Baird* (1884), 95 Ind. 349; *Strickler* v. *Greer* (1884), 95 Ind. 596; *Keesling* v. *Doyle* (1893), 8 Ind. App. 43, 35 N. E. 126.

Where, as in the instant case, one or more of the elements which go to make up and constitute probable cause present questions which are purely questions of fact, such question.should, we think, be determined by the jury. It will not be necessary, therefore, for the trial court, upon a retrial of the case, to attempt to state hypothetically all the facts which it thinks require the jury to find the two elements of probable cause above indicated, nor would it be necessary to such end that the jury should find that each and all of said acts and conduct of plaintiff were evidence of his unsoundness of mind, or that he was in fact of unsound mind at said time. On the contrary, if the jury should find that plaintiff was in fact chargeable with all or some of said acts and conduct testified to by the witnesses, and should further find that such acts and conduct were in fact of such a character as to create an honest belief in the mind of a person of ordinary intelligence and prudence that plaintiff was of unsound mind, and should also find that defendant himself personally knew or had been informed of such acts and conduct.at the time he filed said proceedings, and had used reasonable and ordinary care to inves- tigate and find out the truth and reliability of the information which he had concerning such acts and conduct, and to ascertain the circumstances and con-

ditions and influences surrounding the plaintiff at the time he was alleged to have done said acts; and if such information and knowledge which defendant had so obtained, and which he personally knew, of such acts and conduct of plaintiff at the time he filed such proceedings, were such as to induce in the mind of a man of ordinary intelligence and prudence an honest belief that the plaintiff was then of unsound mind, and if the jury should further find that the defendant, after thus obtaining such knowledge and information, and after making the said investigation in regard to its reliability and in regard to the circumstances and conditions which surrounded and influenced the plaintiff at the time of his said acts and conduct, had good reason to believe, and did in fact honestly believe, that plaintiff was at said time insane, in the sense that he was entitled to be admitted to the Indiana Hospital for the Insane, as a patient for treatment, then the jury should find that there was probable cause. If, however, on the other hand, the jury should find that plaintiff was not in fact chargeable with any of the acts and conduct so testified to by the witnesses, or if it should find that plaintiff was chargeable therewith or with any part thereof, but should also find that the things with which he was chargeable were such as upon proper and reasonable investigation would not create an honest belief in the mind of a man of ordinary intelligence and prudence that plaintiff was in fact of unsound mind, or if the jury should find that defendant failed to make the investigation and inquiry that a man of ordinary intelligence and prudence should have made concerning the acts and conduct of plaintiff of which he personally had knowledge and information at the time he instituted said proceedings, and that such investi-

gation would have convinced a man of ordinary prudence, either of the falsity of said information, or would have furnished an explanation of said acts and conduct consistent with mental soundness such that a man of ordinary intelligence and prudence would not have been induced thereby to believe that the plaintiff was at said time of unsound mind and entitled to be admitted to the Indiana Hospital as a patient for treatment; or if the jury should find that the defendant himself did not believe that plaintiff was of unsound mind at the time he filed said original proceedings against him, the jury in either of the cases last enumerated should find that such proceeding was instituted without probable cause.

Judgment reversed and cause remanded, with instructions to grant a new trial, and for such other proceedings as are not inconsistent with this opinion.

NOTE.—Reported in 117 N. E. 975. Malicious prosecution: belief of defendant in proof of charge made against plaintiff as question of law or fact, Ann. Cas. 1912C 1043; advice of counsel as defense to action, 1 Ann. Cas. 932, 11 Ann. Cas. 954, Ann. Cas. 1912D 423. See under (2, 3) 26 Cyc 8; (6-8) 26 Cyc 114.