**PEOPLES BANK & TRUST CO., Appellant (Defendant Below),**

v.

**Sonja K. STOCK, Appellee (Plaintiff Below).**

No. 1–279A52.

Supreme Court of Indiana.

May 13, 1980.

Seymour M. Bagal, Jon R. Pactor, Indianapolis, George J. Lewis, Greenfield, for appellant.

David W. Foley, Mullin, Foley & Gilroy, Indianapolis, Michael J. Tosick, Ging, Free, Brand, Tosick & Van Winkle, Greenfield, for appellee.

ON PETITION TO TRANSFER

PIVARNIK, Justice, dissenting.

The majority has voted to deny transfer in this cause and allow the opinion of the First District Court of Appeals, 392 N.E.2d 505, to stand. I respectfully dissent from this position and strongly urge that we grant transfer, set aside the opinion of the Court of Appeals, and reverse the judgment of the trial court.

The Court of Appeals has misconstrued the law set out in decisions on malicious prosecution, and effectively and drastically changed that cause of action as it originated and as it was understood to exist up to this point. The cause of action for malicious prosecution has its origin in the common law, and its definitions are to be found in the case law and not in statutory enactment. It has been a little-used cause of action, and it is therefore necessary to go back to the early years of the development of our jurisprudence to find its meaning: The elements or the burden the plaintiff must carry in maintaining his or her action for malicious prosecution have not changed, and were required of plaintiff Sonja K. Stock in this cause of action. Those requirements are: (1) the plaintiff was the subject of a prosecution by the defendant; (2) said prosecution was brought without probable cause; (3) said prosecution was brought with malice; and (4) said prosecution resulted in a favorable judgment for plaintiff. It appears to me the only proof the plaintiff, Sonja Stock, made in this cause, is that there was a prior law suit involving these parties that she won. I have serious questions that plaintiff here proved a prosecution, a lack of probable cause, or, especially, malice on the part of the defendant Peoples Bank.

In order to get these issues in perspective, it is necessary to set out the background facts in more detail than did the Court of Appeals. The evidence showed that Michael Canada was married to Virginia Canada and of this union there were born two children. In 1973, attorney Arthur Ecklund was retained by Virginia Canada to represent her in a divorce action against Michael Canada. He did so represent her through the proceedings and at the final hearing of the divorce in August, 1973. At this hearing, an agreed, non-contested judgment of divorce was entered. As part of this decree, Michael Canada was required to pay a weekly amount of support of the minor children, save Virginia harmless from a Sears Roebuck bill, and furnish Virginia with proof and a membership card showing that Blue Cross insurance was maintained

for the children. In February, 1974, the record showed that Michael was in arrears about seven weeks in his support of the children, had not given Virginia proof of the Blue Cross-Blue Shield membership, and was in arrears in payments on the Sears Roebuck charge account. On behalf of Virginia Canada, Ecklund filed a petition for an order to show cause against Michael Canada because of his failure to comply with the orders of the Court in the final decree. In late February or early March of 1974, the parties were in court on the petition for an order to show cause. Sonja Stock accompanied Canada and his attorney to court that day, and Virginia Canada was accompanied by Ecklund. Ecklund, Canada, and Canada's attorney left the rest of the people and went to a private room in the Courthouse and settled the matter. The settlement was effected by Canada's paying the amount of the arrearage, furnishing the Blue Cross-Blue Shield membership card and showing that he had brought the Sears account up to date. The attorneys then drew an agreed order to show said compliance, and that completed those proceedings.

During this period, subsequent to the entering of the divorce decree, Michael Canada and Sonja Stock started keeping company. Sonja was still married to another man during this time. Sonja and Canada lived together during this time, and there was evidence that she did, at times, use the name of "Canada" rather than "Stock," and that she did, in fact, have bank accounts, driver's license, and other instruments in which she used the name "Sonja Canada," and other instances where she used the name "Sonja Stock." In October, 1974, while Sonja was living with Michael, he committed suicide. Sonja and Michael had never married. Although the evidence is sketchy on the subject, it appears that Sonja Stock's divorce from her husband did become final some months prior to Michael Canada's death.

A short time after Michael Canada's death, Virginia Canada contacted attorney Ecklund, advised him that Michael Canada

was now dead, and inquired of him what steps might be taken to determine what assets there might be of Michael Canada's that might pass by descent to the children. Attorney Ecklund advised her that he would make an investigation and determine whether or not there were any assets that might be obtainable for Michael's children. He determined there were some assets totalling approximately eighteen-hundred ($1,800) dollars, forthcoming from Michael's employer, that represented pay that had not yet been distributed, and further determined there was an insurance policy issued by the Metropolitan Life Insurance Company on Michael Canada's life. He obtained a copy of this policy from the employer and examined it to determine if there was any chance the children might be able to receive the benefits of it. The value of the policy was eleven-thousand, five-hundred ($11,500) dollars.

An examination of the policy showed that Michael Canada had designated the beneficiary in May, 1974: "Sonja Stock—fiancee." In July, 1974, the designation of beneficiary was: "Sonja Canada—wife." Attorney Ecklund further determined that if the designated beneficiary failed, the money would then go to the heirs of Michael Canada, and, of course, those heirs were his two living children. He then attempted to determine whether Sonja Stock had actually married Michael Canada, and he found that she had not. He could find no record of a marriage license being issued to them, and no record that a marriage had been performed by anyone. Everyone in this case agrees that Michael Canada and Sonja Stock had never married. He then determined that since Sonja Stock had been designated as the beneficiary of the life insurance policy, which designation had later been changed to "Sonja Canada—wife," and, since there was no "Sonja Canada—wife," because Sonja had never become Michael's wife, that, in that case, it may be determined that there would be a failure of a designated beneficiary, since it could have been the intention of Michael Canada to leave the money to Sonja *if* she became his wife. Ecklund reasoned that because she never did become

his wife, the money would go to his children. He said he recognized that this was a legal question, and thought it merited a judicial determination.

Ecklund therefore notified Metropolitan Life Insurance Company that he intended to make a claim on behalf of the children. He advised Virginia Canada that the proper procedure would be to open an estate and pursue the insurance policy in the interest of the children. He further advised Virginia Canada that since she, Virginia Canada, and Sonja Stock, had animosity toward each other because of their involvement with Michael Canada, it would be wiser to get a non-partisan person to act as personal representative in the estate. They agreed to ask the trust department of Peoples Bank to act as said personal representative because Ecklund knew they had a capable trust department and had acted as personal representative in estate and guardianship matters in the past. As a matter of fact, Ecklund previously had handled estate matters in which the Peoples Bank acted as personal representative. He then contacted James Rice of the Peoples Bank Trust Department. He advised Rice that he represented Virginia Canada and her children, and advised him of the insurance policy and the legal problem as to the beneficiary, and further indicated to him that it was his opinion that the proper procedure would be to open an estate and have the personal representative of that estate sue the Metropolitan Life Insurance Company for the proceeds of the policy. He advised Rice that there was a legal question involving the designation of beneficiary and that he thought that question needed to be resolved by judicial determination. Rice said he would check with the Senior Trust Officer and let Ecklund know if they were interested in becoming involved. After three or four discussions with Mr. Rice, Peoples Bank agreed to act as personal representative in the cause.

Attorney Ecklund drew up the necessary papers and documents to open the estate and have Peoples Bank designated as personal representative, which was done. Eck-

lund then filed a complaint against the Metropolitan Life Insurance Company and Sonja Stock, in which Peoples Bank and Trust Company, as administrator of the Estate of Michael F. Canada, was the plaintiff. The prayer was that Metropolitan Life Insurance Company be enjoined from paying the policy proceeds prior to a hearing, that judgment be rendered against defendant Metropolitan Life Insurance Company in the amount of the proceeds from the policy, and further that judgment be rendered against defendant Sonja K. Stock with reference to the payment of the insurance proceeds. Details of this complaint will be discussed later in this opinion. The Metropolitan Life Insurance Company then paid the proceeds of the policy into the office of the Clerk of the Court, in interpleader. The cause was tried to the Court, and the trial judge determined that "Sonja K. Stock" and "Sonja Canada" were, in fact, the same person, and, therefore under the law she was the designated beneficiary. He accordingly entered judgment in her favor and ordered that the proceeds of the policy be paid over to her to satisfy the judgment.

This action for malicious prosecution was then filed by Sonja Canada, who had since had her name legally changed to Canada, against the Peoples Bank, complaining that the action brought by Peoples Bank contesting the right of Sonja K. Canada to collect the proceeds of the policy, was done maliciously and without probable cause and in reckless disregard of her rights. Peoples Bank moved to join Attorney Ecklund as a third party defendant. The trial court at first granted the motion, but on reconsideration, denied it. The cause thus went to trial with Peoples Bank as the only defendant. The defendant moved for judgment on the evidence at the close of the plaintiff's case, and again at the close of all of the evidence, but both motions were denied by the trial court and the cause was submitted to the jury. The jury rendered a verdict of $70,000 against the defendant without designation as to what amount was for compensatory damages and what, if any, was for punitive damages.

The first question that logically comes to mind is whether or not Peoples Bank subjected Sonja Stock to a "prosecution." Peoples Bank maintains that the suit it filed against Stock was simply an action for declaratory judgment, and that such an action is not a "prosecution" which can serve as the basis for a suit charging malicious prosecution. They further assert that the only issue involved was one which was a pure question of law: the legal validity of the designation "Sonja K. Canada—wife."

The complaint was titled, "Complaint for Payment of Life Insurance Proceeds and Petition for Temporary Restraining Order," and was drawn in two paragraphs. The first paragraph complained against the Metropolitan Life Insurance Company and set out the death intestate of Michael Canada, the appointment as the Administrator of Michael Canada's Estate of the Peoples Bank & Trust Company, and the insurance policy issued by defendant Metropolitan Life Insurance Company through a group policy in connection with Canada's employment. It further alleged that the plaintiff had been led to believe that the designated beneficiary of the policy is one "Sonja K. Canada—Wife" and that there is no such legal person as designated beneficiary "Sonja K. Canada—Wife." The complaint further alleged that the Metropolitan Life Insurance Company refused to pay the proceeds to the plaintiff as administrator of Michael Canada's estate in the absence of a designated beneficiary, and that unless defendant Metropolitan Life was temporarily restrained until the matter could be heard by the court, defendant Metropolitan Life might extend payment to an imposter alleging to be "Sonja K. Canada—Wife." This paragraph of the complaint asked for a temporary restraining order against Metropolitan Life to prevent payment of the policy proceeds prior to a hearing, and further asked that judgment be rendered against Metropolitan Life Insurance Company in the amount of the proceeds of such policy.

Paragraph two of the complaint was against Sonja K. Stock, and after alleging the existence of the life insurance policy,

alleged that defendant Sonja K. Stock was wrongfully alleging and holding herself out to be one "Sonja K. Canada" when, in fact, she was not, and further that Sonja K. Stock was not the designated beneficiary of the above-mentioned policy. The complaint further alleged that Sonja K. Stock had no insurable interest in said policy or the proceeds therefrom, and therefore asked for judgment against defendant Sonja K. Stock with reference to the payment of the insurance proceeds. The trial court did subsequently issue a temporary restraining order against the Metropolitan Life Insurance Company restraining them from making payments of the policy proceeds prior to a hearing and thereafter set a hearing for the 6th day of February, 1975, at 1:30 p. m.

The cause was submitted to the court and the court made the following entry in its judgment:

"Evidence having been submitted, the Court now finds that defendant Sonja K. Stock is also known by the name of Sonja K. Canada; the Court further finds that defendant Sonja K. Stock, a/k/a Canada, is the person designated as beneficiary by Michael F. Canada on his group life insurance policy with the Metropolitan Life Insurance Company, namely group policy 15500-G, in the amount of $11,500. The Court also finds that the Metropolitan Life Insurance Company has paid by interpleader the sum of $11,500 to the Marion County Clerk. Wherefore it is ordered, decreed and adjudged that the Court finds against plaintiff on its complaint, and the Court finds that defendant Sonja K. Stock, a/k/a Canada, is the beneficiary in the above-described group life insurance and that she is entitled to judgment in the sum of $11,500. The Marion County Clerk is ordered to pay to Sonja K. Stock, a/k/a Canada, the sum of $11,500 to satisfy the judgment. Costs versus plaintiff."

Attorney Ecklund claimed the complaint was drawn in contemplation of having the court decide the proper designee of the proceeds of the life insurance policy. Peoples Bank claims that although the language of a declaratory judgment was not used in the complaint, the substance of the complaint did sound in such a cause of action and that that was the issue actually tried and decided by the court. Ecklund further testified that Sonja was named as a party defendant in the lawsuit because he felt it was necessary in an action for a declaratory judgment to name all persons who have or claim any interest which would be affected by the declaration, and that the judgment would not affect those persons or parties who had not been named in the proceeding. *See* Ind.Code § 34–4–10–11 (Burns 1973). It is true that we will look to what the substance of a complaint or pleading is, rather than the entitlement or designation of its meaning by the pleader. The Legislature provided in § 34–4–10–2 that any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal writing constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract or franchise, and obtain a declaration of rights, status or other legal relations thereunder. § 34–4–10–4 further provides for such declarations being made concerning trust matters and writings in estates. This complaint was entitled *"A Complaint for Payment of Life Insurance Proceeds and Petition for Temporary Restraining Order."* It asked the court to make a determination and enter judgment as to the rights of the parties to proceeds of the life insurance policy. Though the complaint was not artfully drawn, it is necessary for us to determine, in the context which we view it here, what kind of an action it was. The question is, what kind of an action was it and what did it ask and empower the court to do? Put another way, what option or authority was open to the court in trying the cause and entering judgment on it? Without any doubt, the only power the court had in considering the action was that of designating the recipient of the insurance proceeds. The trial court recognized

this when it enjoined the insurance company from paying the money to anyone until after the recipient could be determined by hearing, then found that Sonja Stock, a/k/a Canada, was the one to whom the proceeds should be paid, and then ordered the Clerk to pay Sonja the amount of the policy out of the proceeds that had been interpleaded by the Metropolitan Life Insurance Company. There was no pleading that asked the court or empowered it to do anything more than this. If the court had found against Sonja and for Peoples Bank, it still would have required nothing more of Sonja nor entered any kind of a judgment *against* her, other than to find that Peoples Bank was the proper one to receive the funds as the personal representative of the children. There was no pleading nor finding *personally* against Sonja Stock, a/k/a Canada, in any manner.

The Court of Appeals, in finding that this was a prosecution under the law, indicated that Peoples went further than to simply demand the decision of a legal question by the trial court. The Court of Appeals emphasized that the complaint indicated that Sonja was an "imposter" and was wrongfully claiming to be Sonja Canada, and that those allegations were pertinent to deciding this to be a prosecution under the law. We note again, however, that it is the nature of the action that defines it as a prosecution, and not particular allegations in it that are nothing more than redundancies or excess baggage. This is not an action for libel or slander, but one for malicious prosecution. Calling one an imposter is not necessarily libel or slander, and the term was used in the context of this complaint to attempt to define the status of the parties with relation to the decision to be made by the court. Even if it might be thought by some to be slanderous or libelous, the use of these terms would still not transform the cause of action into one for malicious prosecution if, in fact, the tenor of the lawsuit was not a prosecution. The complaint did not ask for, nor was the court authorized under the pleadings, to enter a *personal* judgment in any manner against "Sonja Stock a/k/a Canada," other than with respect to the

designation of the recipient of the insurance policy proceeds. The court could not and did not make a finding as to the status of Sonja, as to whether she was guilty of a crime or insane or subject to arrest, or whether to hold her on bail or attach her property or inflict some other trespass upon her or her property.

Although the cause of malicious prosecution was originally based on a criminal prosecution, it was decided early that the cause would lie for the bringing of a civil action where there was malice and a want of probable cause in the bringing of the action. *Stancliff v. Palmeter,* (1862) 18 Ind. 321. It is notable that the *Stancliff* case was defended on the ground that, although the plaintiff was not arrested and charged with the crime, the defendant claimed that he did steal a letter belonging to the defendant that contained a thing of value, and that would be a crime if true. The only malicious prosecution cases found in Indiana in our history involved as the underlying prosecution situations in which a crime was charged or in which the malicious prosecution plaintiff was subject to attachment of the body or being taken into custody, such as one charged with being insane and in need of institutionalization. *E. g., Carey v. Sheets,* (1879) 67 Ind. 375; *Lockenour v. Sides,* (1877) 57 Ind. 360; *Strickler v. Greer,* (1884) 95 Ind. 596 (plaintiff accused of attempting to defraud creditor by leaving county with outstanding debts; plaintiff placed in custody); *Treloar v. Harris,* (1917) 66 Ind.App. 59, 117 N.E. 975.

The Court of Appeals in the present case relied heavily on *Treloar v. Harris, supra,* to support its contention that there was a prosecution here. It is true that *Treloar* states:

"The gist of the action for malicious prosecution is that the plaintiff has improperly been made the subject of legal process to his damage. *Herbener v. Crossan,* (1902) 4 Pennewell (Del.) 38, 55 A. 223. The essential element for such an action is a malicious prosecution of some legal proceeding without probable cause before some judicial officer or tribunal.

The scandal or the humiliation, vexation and expense resulting to the person thus wrongfully prosecuted furnishes the ground upon which an action for malicious prosecution will lie. *Turpin v. Remy*, (1833) 3 Blackf. 210, 216; *Coffey v. Myers*, (1882) 84 Ind. 105. To the same effect see the following cases: *Lockenour v. Sides*, supra; *McCardle v. McGinley*, (1882) 86 Ind. 538, 44 Am.Rep. 343; *Pennsylvania County v. Weddle*, (1885) 100 Ind. 138, 143; *Stancliff. v. Palmeter*, (1862) 18 Ind. 321, 324, and cases cited; also Hilliard, *Torts* 270, § 14; Hilliard, *Torts* 3d ed. 426, and cases there cited."

In the cases cited by the Court in *Treloar v. Harris*, *Turpin* was based on a criminal prosecution; *Coffey* was based on a bastardy proceeding in which the plaintiff was arrested and brought to answer the charge; *Lockenour* was based on a proceeding to have the plaintiff adjudged insane, and thereby deprived of the right and liberty to manage and control his property, and to place him under guardianship. *McCardle* was based on an action on account and possession of lands, but because the case was disposed of on other grounds, the court did not reach the question of whether this was a proper ground for a malicious prosecution action. *Pennsylvania County v. Weddle* was based on a criminal action, and *Stancliff v. Palmeter* was based on a criminal charge. *Treloar v. Harris* itself was based on a complaint that the defendant had charged the plaintiff with being insane and had caused him to be arrested and held in jail pending trial, which would have resulted in his being incarcerated in an asylum. Thus, it does not appear that the action to which Sonja Stock a/k/a Canada was subjected here was a prosecution as that term was used in the context of our cases. She was nothing more than a necessary party in a determination of the distribution of proceeds of an insurance policy.

In addition to the question of whether Sonja was subjected to prosecution and can maintain a malicious prosecution action, one must ask whether the action was brought without probable cause and with malice. Both elements must be proved by her to maintain her action. I will first consider the question of probable cause.

In considering the questions of probable cause and malice, we must bear in mind that Peoples Bank is the defendant in this cause, *not* attorney Ecklund or Virginia Canada. Peoples Bank maintains that Stock failed to meet her burden of proving Peoples' lack of probable cause for instituting its action against her. Peoples further argues that it proved its defense of reliance on advice of counsel. To show that probable cause exists for bringing the action it must be shown not only that the defendant believed certain facts to be true but that he made an inquiry and investigation to determine the truth of those facts which a man of prudence and caution would make under like circumstances. *Lacy v. Mitchell*, (1864) 23 Ind. 67; *Indianapolis Traction Terminal Company v. Henby*, (1912) 178 Ind. 239, 97 N.E. 313; *Treloar v. Harris, supra*. In *Indianapolis Traction Terminal Co., supra*, this Court stated:

> "In the abstract, probable cause is a pure question of law, but its existence in a given case is a mixed question of law and fact, when one or more of the elementary facts thereof relied upon is controverted. In such case the court must hypothetically state to the jury the material facts which the evidence tends to prove and positively direct as to the law on the assumed state of facts. Where the *facts* are uncontroverted, the court must determine the existence or non-existence of probable cause. . . ." (citation omitted)

The question here is: what facts did Peoples Bank fail to investigate and determine, so they might come to a conclusion as to the probable cause for maintaining the action. The truth of that matter is that there were *no* facts to be determined, because none of the facts that were relied on to bring the action were in question or conflict. The only open question in the lawsuit was a *legal* question of a designated beneficiary. Trust Officer Rice was aware, through the advice of Attorney Ecklund, that Sonja

Stock had never married Michael Canada. Any investigation by Rice would have resulted in his finding that this was *true*, and it was never denied by anyone in the cause. He was made aware of all the circumstances of the cause, including the fact that Michael Canada had at one time designated "Sonja Stock, his fiancee," as the beneficiary of the policy and had later changed the designation to "Sonja Canada—wife." The only question left was the legal determination of whether Sonja Stock could receive the proceeds in the person of "Sonja Canada—wife," when, in fact, she was not. Attorney Ecklund advised Rice that a judicial determination was necessary to resolve this legal question. Rice testified that he was not a lawyer and he did not consider it his duty, nor did he make it his practice, to make legal determinations in his duty as a trust officer or as a personal representative in estates. The only investigation he might have made would have been to research the law on his own or perhaps get a second or third opinion from other lawyers. He took part in this matter as routinely as he did in other estates he had handled for Ecklund and other attorneys. Rice stated he had had experience with attorney Ecklund's handling of similar affairs before, in which the Bank acted as personal representative, and always found him to be competent and his services acceptable.

The burden on the plaintiff increases when the law provides that not only must there be a showing of lack of probable cause but it also must be shown that the action was brought maliciously. After stating that malice is a question of fact for the jury, the Court of Appeals held: "The jury heard evidence from which it could have found that Peoples failed to make suitable and reasonable inquiry." It was their opinion that, therefore, the jury had sufficient evidence before it to find malice. This, then, is to reduce the burden the law requires of showing malice to that of showing mere negligence. Although the cases have said through the years that the trier of fact may find lack of probable cause in a failure of the defendant to make suitable and reasonable inquiry, it has never been held that

that is sufficient evidence of malice. Malice has never been equated to negligence or a failure to act in any context. The Court of Appeals relied in this finding on *Pontius v. Kimble*, (1914) 56 Ind.App. 144, 145–46, 104 N.E. 981, 981–82, an action for malicious prosecution where the appellate court approved an instruction which included the following language:

> "In the legal sense any wrongful act done willfully and purposely, and without just cause or excuse, to the injury of another, is, as against that person, malicious; and malice, in the sense of the law, does not presuppose personal hatred or revenge, but may be implied under certain circumstances from a total want of probable cause, or from gross or culpable omission to make suitable and reasonable inquiry, and both want of probable cause and malice must be shown to exist to entitle plaintiff to recover. Malice is a question of fact for the jury, who may infer it from a want of probable cause, though they are not bound to do so."

The Court of Appeals has interpreted *Pontius* to say that the jury can determine there was a want of probable cause and that they are then free to find that on that basis there was also malice, *regardless of the facts and circumstances presented by the evidence.* This is a total misreading of the holding of *Pontius* and the law the Court of Appeals relied on in *Pontius* for its decision. The law has always been that in carrying a burden required of a party in any kind of a lawsuit including malicious prosecution, that party must present evidence from which the finding can be made or inferred. In other words, there must be evidence from which the jury can find or infer malice. Examining the language from *Pontius* above set out, we must note the Court used the language: *"[A]ny wrongful act done willfully and purposely and without just cause or excuse, . . . but may be implied under certain circumstances from a total want of probable cause, or from gross or culpable omission to make suitable and reasonable inquiry."* Again we note the requirement stated in *Pontius* to be that

both a lack of probable cause *and* malice must be shown to exist to entitle plaintiff to recover. What *Pontius* is saying here, which is consistent with the law of malicious prosecution from the very beginning, is that there *could be* circumstances where the same facts showed gross and culpable omission to make any inquiry *and* showed a wrongful act done willfully and purposely. Such facts could therefore show *both* lack of probable cause and malice. However, this is not to say the jury can jump directly from a lack of probable cause to malice where there is no evidence of malice from which they can draw the inference. In *Bitting v. Ten Eyck*, (1882) 82 Ind. 421, a malicious prosecution based on a criminal charge, this Court said:

> "To prove malice it must be shown that the charge was willfully false. Any unlawful act, done willfully and purposely to the injury of another is as against him malicious. Malice may be implied from the circumstances such as the defendant's conduct and his declarations and his forwardness and activity in publishing the proceedings. Proof that the defendant never seriously believed the plaintiff guilty of the charge for which he was prosecuted, tends to show malice in the defendant and malice may be inferred by the jury from the want of probable cause."

In *Carey v. Sheets, supra*, this Court stated: "This proceeding was, therefore, in all its essential features, a malicious prosecution, and must be so classed and treated in our consideration of it here. It was, consequently, as important that malice should have been shown on the trial of this cause, as in any other case of malicious prosecution. *Lockenour v. Sides*, (1877) 57 Ind. 360; *Oliver v. Pate*, (1873) 43 Ind. 132; *Seeger v. Pheifer* [*Pfeifer*], (1870) 35 Ind. 13; *Tuell v. Wink* [*Wrink*], (1842) 6 Blackford [Blackf.] 249."

In *Strickler v. Greer*, supra, this Court stated that malice is not a *legal* inference from want of probable cause. It further provided: "It may be, but is not necessarily inferred as a matter of fact from the want

of probable cause. The jury may find from the evidence want of probable cause, and yet find that there was no malice in prosecuting the legal proceedings complained of and in such case their verdict should be for the defendant." In *Newell v. Downs*, (1847) 8 Blackf. 523, the Court found that it was error for the trial court to instruct the jury that if they believed there was a want of probable cause then that would be sufficient evidence of malice. "This instruction should not have been given in the unqualified terms in which it is stated as it tended to mislead the jury. They might well have understood from it that from simple want of probable cause they were bound to infer malice. Such seems not to be the law." This is not to say that there must be direct evidence to show the malice existing in the actor, but actions and attitudes of the actor must be shown from which malice can be found or inferred by the jury. This is similar to the situation that we have found repeatedly in criminal cases where malice or intent can be inferred in the defendant's action when he purposely and deliberately uses a dangerous weapon known to be capable of causing personal injury or death in such a manner as is calculated to cause such results.

On appeal we will not review the evidence and resolve conflicts in the evidence. This is the duty of the trier of fact. It is our duty, however, to review the record and determine whether there are any facts on which the jury could have based its judgment. As stated by this Court in *Estes v. Hancock County Bank*, (1972) 259 Ind. 542, 289 N.E.2d 728:

> "The existence of malice is to be determined by the trier of fact. *Stivers v. Old National Bank in Evansville*, (1970) 148 Ind.App. 196, 264 N.E.2d 339, 342; *Pontius v. Kimble*, (1914) 56 Ind.App. 144, 104 N.E. 981; *Lawrence v. Leathers*, (1903) 31 Ind.App. 414, 68 N.E. 179. On appeal this court will not weigh the evidence but will examine the record to determine if there is any evidence or legal inference which will sustain the verdict or finding. *Phar-Crest Land Corporation v. Therber*, (1969) 251 Ind. 674–678, 244 N.E.2d 644–

646; *Kirkum v. Kasprzak*, (1961) 242 Ind. 198, 177 N.E.2d 459; *Southport Board of Zoning Appeals v. Southside Ready Mix Concrete, Inc.*, 242 Ind. 133, 176 N.E.2d 112, (reh. den.); *Anderson v. Kinser*, (1961) 241 Ind. 555, 173 N.E.2d 914."

An examination of the transcript of all of the evidence before the jury in this cause reveals Sonja's testimony· to be as follows. She knew Ecklund represented Virginia Canada ·in the divorce of Michael and Virginia Canada. She was present at the support hearing where there was a citation against Michael Canada for failure to pay support money and heard Ecklund tell Canada that if they went back into court, he (Ecklund), would "hang" you (Canada). She stated at one point: "Ecklund was putting me through the same routine he had put us through years before and that Mike was dead now so he was starting on me." She said she felt Ecklund was trying to hurt her because she was with Michael. The following questions and answers appear in the cross-examination of Sonja:

"Q. I believe you testified that Mr. Ecklund and Mrs. Canada, Virginia Canada, were scheming or plotting or conspiring to hurt you.

A. Yes, sir.

Q. Is that right?

A. Yes, sir. I did say that.

Q. And are they the ones that started the lawsuit against you?

A. I think the papers came from Peoples Bank. I don't know. I would imagine that Mr. Ecklund would have something to do with it, but it come to Peoples Bank and Peoples Bank was the one that sent it to me, sir."

Record at 271.

She made other statements in regard to Virginia Canada and Ecklund being against her because of Mike. She was then asked if she had sued Virginia or Ecklund, and she answered "no." She testified that she knew nothing about the Peoples Bank and, in fact, didn't even know they existed. She did recollect that at one time in the past she had cashed a check there, but there was nothing significant about the transaction. The following questions and answers then ensued:

"Q. You don't know any of the officers, employees or anyone else at the Peoples Bank, do you?

A. No, sir.

Q. Then or now?

A. Well, just you guys, that's it.

Q. Okay. Do you know any reason why Peoples Bank .would do anything against you willfully?

A. Well I think awhile back you said that Mr. Ecklund had something to do with your bank, he was at one time connected with your bank and I would say that would be the reason why sir.

Q. You're saying now that there is a reason?

A. Well, it·has to be Mr. Ecklund in my opinion, yes.

Q. What is Mr. Ecklund's reason?

. . . . .

A. Does that mean I answer?

Q. Go ahead and answer.

A. Virginia Canada and the hassles they had with Michael. They had both threatened him and they both disliked me very much and they didn't appreciate me living with him, but you know that is my business. And I would imagine his reason for doing that was because of Virginia. Now do you want to know the reason why he would do it because of Virginia? Or can I answer that?

Q. I asked you whether or not you know of any reason why Peoples Bank would do anything against you willfully, that was my question.

A. O.K., I just answered it.

. . . . .

Q. So it was Ecklund who wanted to do something against you willfully? Is that what you are saying?

A. Sir, I don't know that for sure but I'm saying in my opinion.

Q. All right, and Virginia as well?

A. Yes, I would say so. Like I said, I don't know for sure, I'm just giving you my opinion."

Record at 284–86.

This was the only evidence presented by the plaintiff on the subject of Peoples Bank's alleged malice. Ecklund and Rice were cross-examined at length on the legal questions raised by the original law suit. The plaintiff attempted to show by its cross-examination of both of these witnesses that there were other ways of approaching the problem of obtaining the funds from the insurance company. One other way might have been an action by the mother and natural guardian, Virginia Canada, directly against the insurance company, rather than by opening an estate and subjecting the assets of the children to claims. Another point was that if Ecklund had researched the legal question he would have found that his legal basis was very weak and his chances of winning the suit against Metropolitan and Sonja were very small.

As a matter of fact, it is true that Ecklund's legal position in the action for the insurance proceeds was very weak. In the first place, we must observe that Ecklund was not the defendant here; Peoples Bank was. As a matter of fact, Peoples attempted to bring Ecklund in as a third-party defendant, and the court denied him that privilege. Second, even if it could be assumed that Ecklund was grossly negligent in his handling of the legal matters, or even was willful in doing so, that that attitude cannot be imputed as malice on the part of Peoples. If we are going to allow this to be the law, then we would do well to sound a warning to citizens who would henceforth become plaintiffs in lawsuits, for if it would be found that their lawyers brought an action in their behalf on which their chances of recovery were slim, then *they* would be subjected to an action for malicious prosecution. Lawyers, too, had better examine such a finding at their own peril, for it would be expressive of the fact that their bringing of an action for a client,

where a trial revealed that the law was strongly against them, *alone* would be sufficient evidence that they may be subjected to an action for malicious prosecution. This, of course, has never been the law, and should not be now, but to allow the Court of Appeals opinion to stand would make it so.

On the above set of facts given to the jury by the testimony of the witnesses, it is apparent that there was no evidence whatever in regard to Peoples Bank's alleged malice. The only testimony was that of Sonja Stock, in which she said that she *presumed* Ecklund was against her because of her connection with Mike and then *imagined* that Peoples Bank took this case against her because of Ecklund. Her presumptions and her imaginings are not evidence from which the jury could find nor infer malice. Such then there was no evidence whatever of malice, much less lack of probable cause or a prosecution under the law, the trial court should have granted defendant's motion for a judgment on the evidence at the close of the plaintiff's case. I would, accordingly, grant transfer on defendant's petition and so instruct the trial court.

GIVAN, C. J., concurs.

## ON PETITION TO TRANSFER

PRENTICE, Justice.

I vote to grant transfer for the limited purpose of reducing the award of damages, which I regard as grossly excessive.

I cannot concur in Justice Pivarnik's opinion, as in my judgment, it does not conform to our time-honored standards of appellate review upon challenges to the sufficiency of the evidence. When we look only to the evidence and logical inferences that favor the verdict and cannot say that reasonable men could not have reached such verdict, we are required to affirm. We cannot substitute our assessment of the evidence for that of the jury simply because we believe that they erred.

Justice Pivarnik has chosen to re-state the case in a light more favorable to the

appellant; but the statement of the Court of Appeals is not without support of the record, and we are bound to accept the inferences favorable to the verdict when so supported. I agree that contrary inferences could just as logically be drawn—perhaps even more logically be drawn; but the Court of Appeals was not free to substitute its logic for the jury's logic, and neither are we.

There clearly was no merit to the law suit filed by the appellant against the appellee. Even the appellant's trust officer acknowledged from the witness stand that, after seeing all of the facts, he was convinced that the appellee was the beneficiary intended to be designated. Prior to agreeing to become the Administrator of the estate of Michael Canada, the appellant had no involvement, i. e., no obligation to Mrs. Canada or to her children. There was no estate or trust in need of administration. If a declaratory judgment suit had been appropriate, it could have been more appropriately and more economically instituted on behalf of the children.

Appellant is a prominent and highly respected financial institution; and, while we may have our own opinions as to how it came to be in the awkward predicament of a defendant in an action for malicious prosecution, the jury could have reasonably concluded that, for the expectancy of a profit, it loaned its "muscle" to Mrs. Canada and to her attorney who hoped, thereby, to intimidate the appellee into relinquishing all or a portion of insurance proceeds that were lawfully hers. In criminal appeals, we frequently say that malice was not reasonably inferable from the circumstances of this case.

For the reasons stated, it is my opinion that we are not at liberty to reverse the judgment of the trial court. However, the issue of whether or not the damages awarded were excessive is also before the court, and it is my opinion that the award was so excessive as to demonstrate prejudice, bias and irrationality. The appellee's direct financial loss occasioned by the appellant's impropitious excursion was $3800.00. She was entitled to recover this plus a reasonable sum to compensate her for the inconvenience, embarrassment and anxiety, to which she should not have been subjected, and perhaps something in addition for punitive purposes. We should not close our eyes to excessive awards merely because it cannot be said with mathematic certainty what amount would have been appropriate. The verdict was in excess of reason and should be reduced substantially. I, therefore, would grant transfer for the limited purpose of affirming the judgment conditioned upon a remittitur. Alternatively, I vote to deny transfer.